### WINDMULLER *et al. v.* LOVEJOY *et al.*

(*Supreme Court, General Term, First Department.* June 6, 1890.)

**1. Fraudulent Conveyances—Evidence.**

Defendant L., a stockholder in the R. Co., indorsed notes given by the company to plaintiffs. About the same time he transferred his interest in a certain firm to defendants F. and C., the consideration being an indebtedness of L. to the firm and shares of stock held by F. in the R. Co. But it appeared that L. continued to occupy the same position towards the firm that he had always done, and that the R. Co. was financially embarrassed to the knowledge of F. Judgments were also rendered against L., in favor of defendant B., it being alleged that they were based upon loans made to L., and that the stock of the latter in the R. Co. had been transferred to B. as collateral therefor. But L. testified that he had asked B. to buy the stock, and that he had offered to guaranty him against loss, and the stock was transferred to B.'s name. *Held*, that such conveyance and judgment, as well as a conveyance made to L.'s wife before the indorsement of the notes, were a part of a scheme to defraud creditors, and would be set aside.

**2. Same.**

But a transfer of property by L. to defendant W. for a valuable consideration will be sustained, there being no evidence of any participation by W. in the fraudulent designs of L.

Appeal from special term.

Action by Louis Windmuller and another against Henry W. Lovejoy and others. Judgment was given for plaintiffs, and defendants appeal.

Argued before Van Brunt, P. J., and Daniels and Brady, JJ.

*B. Estes, F. Seymour,* and *A. F. B. Chase,* for appellants. *A. Blumenstiel,* for respondents.

Van Brunt, P. J. This action was brought by the plaintiffs as judgment creditors of the defendant Henry W. Lovejoy to reach certain property claimed to be the property of the judgment debtor, and fraudulently transferred for the purpose of defrauding his creditors. The transfers sought to be impeached were—*First,* a transfer by Henry W. Lovejoy of his seven twenty-fourths interest in the firm of Lovejoy, Son & Co., made on February 6, 1888, to the defendants Ferguson & Cregan; *second,* a transfer made in July, 1888, by said Lovejoy to defendant Wood of one twenty-fourth interest in the same

firm; *third*, a judgment and execution against said Lovejoy in favor of the defendant Bruce, and the sales thereunder; *fourth*, to reach a portion of a mortgage made by the defendant Susan C. Lovejoy, the wife of the judgment debtor; *fifth*, to reach certain real estate in Harrison, Hudson county, N. J., which was conveyed to said Susan C. Lovejoy, and to have the property declared to be the property of the judgment debtor, and applicable to the payment of the plaintiffs' judgment; and, *sixth*, to reach the judgment debtor's interest in his father's estate, and to have the same applied on the plaintiffs' judgment. The plaintiffs several claims upon which this action is founded originated in a sale of rubber to the Universal Rubber Company early in February, 1888, for which notes were given indorsed by Henry W. Lovejoy, dated in February and March, the first note maturing in July, 1888, and upon which judgments have been obtained and executions returned unsatisfied. The grounds upon which these transfers are sought to be set aside are that they were made by Lovejoy with intent to hinder, delay, and defraud his creditors. It might very well be true that some of these transactions, taken by themselves, might have been upheld under the principles laid down by the adjudicated cases. For example, the transfer of the Hoboken property by the executors of Henry Lovejoy, deceased, to the defendant Susan C. Lovejoy, for which the interest of her husband in his father's estate was charged $13,900, the purchase price of the property. Such transfer having taken place prior to the time when Henry W. Lovejoy became indebted upon his indorsements for the rubber company, and the conveyance having been recorded promptly, standing alone would have exhibited no intention upon the part of Lovejoy to transfer this property to his wife in fraud of creditors. But when we find that he is pursuing a system of transfers so that he utterly strips himself of all his property except his stock in the rubber company, it may very well be held that this transfer was part and parcel of the scheme which he entered into at that time to secure his wife at the expense of his creditors. The transfer by Henry W. Lovejoy of his seven twenty-fourths interest in the firm of Lovejoy, Son & Co., made on the 6th of February, 1888, seems clearly to have been part and parcel of a plan which he had formed long before for the purpose of placing beyond the reach of his creditors whatever property he might have possessed. It is found by the court below, as the ground upon which the charge of fraud is to be sustained, that this transfer was substantially without consideration. It appears that it was made for the consideration of an indebtedness due from Lovejoy to his firm of $14,000 or $15,000, and 338 shares of Universal Rubber Company's stock held by Ferguson. It further appears that, after this transfer of all his interest in the firm, Henry W. Lovejoy occupied the same position towards the firm as he had previously done, namely, he transacted all its financial business; no change was made; he drew from the firm as previously; exercising all the rights of a partner after having parted with the whole of his interest. It would seem, under these circumstances, that the transfer was intended only to be a cover, there being no change in the relations of these parties to this business; and, although it may not be entirely clear what knowledge Ferguson had of the condition of the rubber company, yet still it is reasonably sure that he knew that the company was being pressed for money, and had good reason to suppose that, unless new capital was brought into the concern, it could not continue its business; and it was undoubtedly because of this fact, and because Lovejoy was so mixed up with the concerns of the rubber company, that it was determined that his interest in the firm of Lovejoy, Son & Co. should be transferred to his other partners in order that it might be protected from his creditors. It is sought to account for his presence as a member of the firm by the fact that he was entitled to one of the three twenty-fourths interest which his father's estate owned. But this he only held as executor, and in no way gave him the rights of a partner.

We further find that as far back as July, 1887, to secure the indebtednes&
of the rubber company to the friends of Lovejoy, viz., Mrs. Lovejoy, Fergu-
son, and Lovejoy, Son & Co., the property of the company was agreed to be
mortgaged to the amount of over $23,000, which mortgage was actually ex-
ecuted in October, 1887.  It further appears that Ferguson was aware of the
existence of this mortgage, because as a stockholder he assented to its execu-
tion, and this mortgage was not recorded; and, although some attempts to
excuse the failure to record are made, yet the significant fact exists that it
was not recorded until the impending failure of the rubber company,—a fact
exceedingly significant, in view of the critical condition in which the compa-
ny seems to have been placed during this period.  It seems to be clear that
Ferguson must have known of the embarrassed condition of the rubber com-
pany, and that in the disposition of this stock for the interest of Lovejoy he
had good reason to believe that he was selling what was not of very great
value for that which had for years been a continuous source of income.  And
this mortgage, given under the circumstances disclosed, kept from the record
as it was, given virtually to secure indebtedness to stockholders of which they
made gifts to Mrs. Lovejoy, indicated a plan upon the part of these people,
as far as possible, to secure whatever property there was, of either Lovejoy
or the rubber company, for the benefit of persons who could not legally ac-
quire a preference in the property of the rubber company over its other cred-
itors.   This is another circumstance which characterizes the whole of these
transactions.

Then we have the procuring of the judgment by the defendant Bruce.   It
is sought to sustain this upon the ground that the stock of the rubber company
was transferred to him as collateral for loans made to Lovejoy.  Now, the
evidence is conclusive that there was no such loan.   On the contrary, it was
a purchase of the stock by Bruce at the suggestion of Lovejoy, and this idea
of a loan came into existence when the rubber company got into difficulties,
and the stock was proven valueless.  Mr. Lovejoy testified that he solicited
Bruce to buy this stock, and that he offered to guaranty him against loss,
and the stock was transferred to Bruce's name,—evidence characterizing
the transaction beyond question.  If Bruce was loaning money to Lovejoy,
and taking this stock as collateral for that loan, why should Lovejoy guaran-
ty him against loss?   His indebtedness to Bruce upon the loan was certainly
a better security than his guaranty.   The giving of a guaranty is only con-
sistent with the idea of a purchase.   Mr. Lovejoy might very well guaranty
Bruce against loss in case he bought the stock, but such a transaction would
be absolutely senseless in the case of a loan.  And, furthermore, if Bruce did
not think himself the owner of that stock, and intend to exercise the rights
of an owner, why did he have it transferred to his own name?   The pledge
of the stock was just as good while it stood in the name of Lovejoy; and un-
less Bruce supposed himself to be the owner, intending to exercise the rights
of an owner, and not simply those of a pledgee, it does not seem probable
that he would have had it transferred to his own name.   We think the evi-
dence conclusively shows that this idea of a loan was an after-thought, and
that the judgment obtained by Bruce against Lovejoy was upon an indebted-
ness which did not exist.

As to the transfer of the one twenty-fourth interest in the firm of Lovejoy,
Son & Co., it may be that Henry W. Lovejoy and his partners, in the share which
they took in that transfer, did it for the purpose of placing it beyond the reach
of the creditors of Lovejoy.   But there is no evidence whatever that the de-
fendant Wood participated in that fraudulent intent.   He was applied to for
money.   He asked for security, and it was stated that Lovejoy had an inter-
est in the firm which he would sell.   The price named was $2,000, and Wood
said he would buy it, if he could get the money.   Representations were made
by Ferguson & Cregan to Wood as to the value of this interest.   In fact, they

guarantied to Wood a profit of 10 per cent., and it was under these circumstances that Wood took the transfer of this share, paid $500 in cash, and gave his note for $1,500. What Lovejoy did with the money or with the note was none of Wood's business, nor was he at all interested therein. There was nothing to show, as far as the evidence discloses, any design upon the part of Wood to cheat, defraud, or delay the creditors of Lovejoy. In fact, he seems to have been actuated in this transaction with the desire to furnish Lovejoy the means of satisfying some of these demands. Simply because it is stated that Lovejoy paid his attorney with the money and securities received from Wood does not in any way affect Wood's title. There was no such inadequacy of consideration as impeached the transaction as far as he was concerned. It was undoubtedly a *bona fide* purchase on his part, though the sale may have been made upon the part of Lovejoy and his partners for the purpose of putting that interest out of the reach of Lovejoy's creditors. But Wood, not being a participant in this scheme, having paid his money and taken the transfer, simply because he did not atempt to intrude himself into business with which he had nothing to do, cannot be deprived of a purchase made by him in good faith. We think, therefore, upon the whole case, that the evidence discloses an evident intent upon the part of all these parties, except Wood, to put the property of Henry W. Lovejoy beyond the reach of his creditors, and that all these transactions, commencing with the gift to his wife, were in pursuance of a common scheme for the purpose of attaining a common end, and that, therefore, these transfers, this judgment, and this mortgage were fraudulent as against the creditors of Henry W. Lovejoy, and that the transfer to Wood would have been fraudulent if there had been anything to show that Wood had participated in any such design. We think, therefore, that, with the exception of that part of the judgment which impeaches Wood's title to the one twenty-fourth interest in the firm of Lovejoy, Son & Co., it should be affirmed, and as to that part of the judgment it should be reversed, and a new trial ordered, with costs to the appellant Wood to abide the event. All concur.